**PRATT et al. v. HAYWARD et al.**

No. 5814.

Court of Civil Appeals of Texas. Texarkana.

May 15, 1941.

Underwood, Harben & Warren, of Marshall, for appellants.

Scott & Hall, of Marshall, for appellees.

WILLIAMS, Justice.

In a trial de novo in the district court on an appeal by writ of certiorari from the Probate Court of Harrison County, Texas, grounded on jury findings, the instrument offered by appellee, Garland Hayward, proponent below, as the last will and testament of Sarah Saunders, deceased, was admitted to probate. She was appointed independent executrix without bond; and certified copy of the proceedings ordered prepared and filed with the probate court for observance. From such decree appellants, Ethel Pratt, Leroy Saunders, and Bernice Mayes, contestants below, have perfected an appeal. The objections to its probate, as briefly stated in the pleadings of contestants, are: (1) That deceased did not execute said instrument as her last will and testament; (2) that deceased did not possess testamentary capacity at the time; and (3) that said instrument is not the will of deceased, but the will of Garland Hayward and "was the result of duress, undue persuasion, overriding and dominating the feeble mind and will of the said Sarah Saunders."

In response to special issue Nos. 1 and 2, the jury found that the instrument tendered for probate was executed by Sarah Saunders on August 12, 1937, and that she had testamentary capacity at the time she executed the instrument, dated August 12, 1937. These two were the only issues submitted. After the close of the evidence and before the court's charge was read to the jury, appellants tendered to and filed with the court an issue with the request that it be given, designated special requested issue No. 3, reading: "Do you find from a preponderance of the evidence that

in the making and execution of the instrument, which was signed by Sarah Saunders by making her mark, dated on the 12th day of August, 1937, and which is sought to be probated here as her last will and testament, was procured by undue influence on the part of the proponent, Garland Hayward? Answer Yes or No." A definition of the term "undue influence" formed a preamble to the issue tendered. The failure and refusal to give this requested issue is assigned as error and forms the basis of appellant's fifth proposition. The assignment is sustained.

Ethel Pratt and Garland Hayward are the two living children of Sarah Saunders. Two other children of Sarah who died prior to her death left two children surviving them, namely, Leroy Saunders and Bernice Mayes. Leroy and Garland lived near Sarah in Marshall; Bernice and Ethel lived in Dallas. With exception of signature, the instrument offered for probate as the will is wholly written on a typewriter, including its date. Omitting its formal parts, it provides:

"(1) To my beloved grand children, Bernice Brown and Leroy Saunders I hereby give $1.00 each out of my estate.

"(2) To my beloved daughter Ethel L. Pratt I hereby give $1.00 out of my estate.

"(3) To my beloved daughter Garland Saunders Hayward I hereby give all the rest of my property both real and personal that I own in Harrison County, Texas, and my interest in Dallas County, Texas. She is to give me a decent funeral in keeping with my standing in life and is to pay all my debts that I owe at the time of my death. All money that I may have at the time of death is to go to Garland S. Hayward.

"I further request that Garland S. Hayward be appointed administrator of my estate without bond."

The instrument was signed "Her X mark, Sarah Saunders"; witnesses, J. H. Moore, Hattie L. Moore.

After above-named witnesses had been called to Sarah's home by some one, and after their arrival, above instrument was produced by either Garland or Sarah. Garland and Sarah and the two witnesses were together and seated in a semi-circle at the time J. H. Moore read the will to Sarah. According to the testimony of the Moores, both being reliable and trustworthy, they heard Sarah then say after

it was read to her that "she wanted to make this will while she was in her good mind because this daughter had done everything for her and she wanted that daughter to have what she had;" that Sarah then made her mark, and he, J. H. Moore, wrote her name, and he and Hattie, his wife, then signed as witnesses. Sarah died May 14, 1939, at an age variously estimated between sixty-eight and eighty. Her ability to read and write became impaired in the late years of her life. During the last two years she suffered from a cardiac trouble. In the application to probate, the value of Sarah's estate is estimated at $2,000, and consisted of the old home place, another piece of residential property in Marshall and a dwelling house in Dallas.

Sarah's husband died in 1928, leaving her $2,000 insurance money, which she deposited in a Marshall bank. The last of this fund with accumulated interest was withdrawn by Garland on the day prior to Sarah's death. Garland claims it was used in payment of illness expense. In March, 1938, Sarah and Garland called at the bank together and withdrew $400. This went to pay for a small house erected under Garland's direction near her home and was used as Sarah's home from March, 1938, until she died. Contestants claimed that an additional $65 was used to pay for the lot and its title was taken in Garland's name. In 1935 Sarah gave the bank written authority to honor checks drawn on her account by Garland.

According to the evidence offered by contestants, Sarah had practically reared Leroy and Bernice; Bernice had lived with Sarah until she was fifteen, and thereafter visited her grandmother each year, and on August 12, 1937, had been visiting in her grandmother's home for several days; Leroy had lived with Sarah until he married, and thereafter resided on adjacent property to her; that they had always been kind and attentive to her, and Sarah was devotedly and affectionately attached to them; that Garland had bossed Sarah around, prohibited her from moving to her brother's home; that Garland had exercised control over Sarah's funds and had dissipated same to Garland's use; that in the late years of her life Sarah became feeble in mind and body; that she had stated she was not going to make a will; that Garland had caused the will to be written out and had kept the instrument in her possession several weeks before it was executed; and that it was not signed on the date it bears.

According to the evidence offered by the proponent, Ethel, Leroy and Bernice had ignored, neglected and forsaken Sarah; that Leroy had crossed Sarah's wishes and differences had arisen between her and Leroy and his wife after their marriage; that Sarah was devotedly and affectionately attached to her, Garland, and the latter at all times was considerate, attentive and thoughtful for the welfare of her mother; and cared for her mother in sickness and in health; that Sarah was of good mind and possessed a strong will.

As stated in Russell v. Boyles, Tex.Civ.App., 29 S.W.2d 891, 892: "In the very nature of things each case must rest upon its own facts; and whether or not undue influence has been exerted by an interested beneficiary must usually be established largely by circumstances." Viewing the foregoing pertinent portions of the evidence in the most favorable light to determine if an issue of fact on the question of undue influence was presented for a consideration of the jury, it is thought that such combined facts and circumstances were sufficient to take the issue to the jury. Long v. Long, 133 Tex. 96, 125 S.W.2d 1034; Barksdale v. Dobbins, Tex.Civ.App., 141 S.W.2d 1035; Russell v. Boyles, supra; 44 T.J. 578.

This litigation relates to a will contest, and does not involve the construction of any of its terms, and proposition No. 1 is overruled. The evidence is amply sufficient to support the jury's finding that Sarah Saunders had testamentary capacity at the time of the alleged execution of the purported will, and propositions 3, 7 and 8, which attack the jury's finding on testamentary capacity, are overruled. In view of another trial, attention is directed to the construction of Article 3716, R.C.S. 1925, as discussed in International Travelers' Ass'n v. Bettis, 120 Tex. 67, 35 S.W. 2d 1040.

For the reason indicated, the judgment is reversed and the cause remanded.