## UNITED STATES v. CRUME.
### No. 6382.

Circuit Court of Appeals, Fifth Circuit.
Dec. 21, 1931.

Eric Eades, U. S. Veterans' Administration, of Dallas, Tex., and Norman A. Dodge, U. S. Atty., and Alex M. Mood, Asst. U. S. Atty., both of Fort Worth, Tex., for the United States.

W. S. Birge, of Amarillo, Tex., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

In 1929 Crume brought suit upon a war risk insurance policy, alleging that in May, 1918, while the policy was still in force by the payment of premiums, he became totally and permanently disabled. In November, 1930, the case went to trial, and an instructed verdict requested by defendant having been refused, the jury found for plaintiff.

In United States v. Martin, 54 F.(2d) 554, we have had recent occasion to review the general considerations governing suits of this kind. Of these it will suffice to say here that it is ordinarily for the jury to say, under appropriate instructions, whether plaintiff became totally and permanently disabled within the life of the policy, and that where a verdict accords with any reasonable view of the evidence it must be upheld. That policies of this kind, insuring as they do against the contingency of the insured becoming prevented by disability from earning a living for himself by working, are liberally construed to give effect to their purpose of supplying to the extent of the policy payments, the living which his disability prevents him from earning. That under such a policy one is totally disabled when he is

not, without injury to himself, able to make his living by working. That it is not necessary to prove absolute inability to do any kind of work and that proof that the insured has been able to do some work, while pertinent evidence, is not of itself disproof of disability. On the other hand, this being a suit on a contract, which if plaintiff's theory is correct has been a claim for nearly twelve years, in the face of evidence that no claim of this kind was ever made until suit was filed, and that during all of the time since his discharge plaintiff has worked at various occupations, he must, in order to recover, present evidence definite and substantial enough to make the inference which he asks the jury to draw as to his condition, twelve years before, a reasonable one under the facts, based on probabilities, not possibilities, something more than mere conjecture.

"Verdicts must rest on probabilities, not on bare possibilities. There is not capacity in any number of the former to create the latter. So the person on whom the burden of proof rests to establish the right of a controversy, must produce credible evidence from which men of unbiased minds can reasonably decide in his favor. He cannot leave the right of the matter to rest in mere conjecture and expect to succeed. * * * The doctrine of those cases condemns the grounding of a verdict upon such shadowy proof as not to establish the vital facts to a reasonable certainty." Samulski v. Menasha Paper Co., 147 Wis. 285, 133 N. W. 142, 145.

▆▆ Further, this evidence must not merely show that he was at the time of his discharge totally disabled, but that he has continued and will continue to be so, not as the result of successive maladies making their onset from time to time, but as the result of the same malady, which then totally disabling, has continued and will continue permanently to be so. We think it perfectly clear that he has not made out such a case. The facts succinctly stated are that Crume, a nineteen year old boy, enlisted in the United States Army on March 8, 1918 at La Junta, Colo. On April 15 he was hospitalized for sickness. In February, 1919, he was honorably discharged as totally disqualified for further military service. Upon his discharge record appears the notation "physical condition when discharged fair." In his application for compensation made on leaving the service, he stated that the nature and extent of his disability was chronic pulmonary tuberculosis, 25 per cent.

and that he had dropped his war risk insurance. In 1920 he married and now has a large family of children. Though he does testify to recurring sicknesses and weaknesses, principally stomachic, and to frequent enforced cessations from work because thereof, his proof and that of all the other witnesses establishes as a fact that ever since his discharge he has worked with reasonable continuity at some kind of gainful occupation, working sometimes ten and sometimes twelve hours a day, earning his livelihood. That at times he has done the hardest kind of work; at other times, lighter work. While it is true that his wife corroborates him in his testimony as to the onset from time to time of various disabilities and that his working has been sporadic and irregular on account of them, these statements, if taken as evidence of the existence of any disabling malady having both totality and permanence must, in the light of the record, be received as mere opinions contradicted by facts. Especially is their testimony wanting in proof of the existence of a malady totally and permanently disabling him in 1919 and continuing thereafter. No medical opinion was offered in support of his claim. On the contrary, the only physician called by plaintiff to testify, the one who had examined and found him fit for vocational training, testified that he made an examination of Crume in August, 1925 for abdominal disability following an appendicitis operation. That no complaint was made to him then of tubercular or other afflictions and that the only disability which he found was stomachic, with an estimated industrial handicap of 20 per cent. He testified that he found and reported Crume as feasible for receiving the benefits of vocational training, and that no person found to be totally disabled would be or was ever recommended for such training. He also testified directly: "It is my opinion from my examination in August, 1925 that he was not suffering from any impairment of mind or body which would prevent him from following continuously any substantially gainful occupation. I did not consider him permanently and totally disabled in August 1925." The record shows that Crume received vocational training as a shoe repairer, and that he worked at it under his trainer and in his own shop for many months. No lay witness testified to any fact from which the existence of a disabling malady having the character of totality and permanence could be inferred; on the contrary, all of the witnesses while testifying that

Crume complained from time to time of ailments, testified to his having worked in various employments with substantial regularity and reasonable effectiveness.

Apart from the fatal weakness of plaintiff's case both positively and negatively from the standpoint of medical testimony, no physician having testified in support of his claim, and the only one that he called having testified positively to the contrary [U. S. v. Cole (C. C. A.) 45 F.(2d) 339, 340], not only is there wanting definite lay testimony tending to establish the necessary facts, but the sum of the physical facts makes such a complete and final refutation of the claim of Crume, that he was in 1918 seized with a disability which then and thereafter rendered and will continue to render him totally and permanently disabled, as to wholly destroy as bases for the jury's inference that such seizure then occurred, the more or less vague opinions of himself and his wife as to the fact and the causes of interruptions in his work through the long period which elapsed between discharge and suit. In such a case there is nothing firm upon which the verdict of the jury may rest, only possibility piled upon possibility, Samulski v. Menasha Paper Co., 147 Wis. 285, 133 N. W. 142, 145; Austin v. Nieman (Tex. Com. App.) 14 S.W.(2d) 794; only vague inference upon vague inference, Community Natural Gas Co. v. Henley (Tex. Com. App.) 24 S.W.(2d) 10. This case, in its entire absence of supporting medical testimony, is much like Cole's Case, supra and United States v. Le Duc (C. C. A.) 48 F. (2d) 789, 791. In its general aspects it is most like Nicolay v. United States (C. C. A.) 51 F.(2d) 170.

The court erred in refusing to direct a verdict. For that error the case must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.