### RAILWAY EXPRESS AGENCY, Inc. v. COX.

No. 12779.

United States Court of Appeals
Fifth Circuit.
Jan. 19, 1950.

George W. Gibson, Jr., Lubbock, Texas, Charles L. Cobb, Lubbock, Texas, for appellant.

Wm. H. Evans, Lubbock, Texas, for appellee.

Before HUTCHESON, Chief Judge, WALLER, and RUSSELL, Circuit Judges.

WALLER, Circuit Judge.

Cox, a Railway Express messenger, let a pistol fall out of a holster, with the result that the hammer supposedly struck the floor of the express car and fired a bullet into his foot, thereby giving rise to this suit against his employer for damages thus sustained.

Plaintiff was required, on each trip, and when on duty, to wear a pistol issued to him by a local agent of the Company. He alleged that after having received a pistol from a Company agent, he, in the course of his employment, bent over to pick up a package and the gun fell out of the holster which also had been issued to him by the agent of defendant. He alleged as proximate causes of the accident negligence of the Company in two respects: (1) Failing to issue to him a pistol with the hammer resting on an unloaded chamber; and (2) issuing to him a holster that was defective in that it "had a difficult snap lock" and that "it was difficult to lock" because of its newness.

The pistol and holster were issued at El Paso for his use on the run to Big Springs, Texas, and return. He admits that he did not inspect the weapon and says, therefore, that he was unaware that the hammer rested on a loaded chamber, which, he says, must necessarily have been the case since the pistol fired when the gun struck the floor and drove the plunger against a loaded cartridge in the cylinder, and that this could not have happened had the plunger been opposite an empty chamber. He admits that he observed at the time of issuance that he could not fasten the flap on the holster but that he made no mention thereof to the issuing agent, and upon his arrival at Big Springs he made no complaint as to the holster but placed it and the weapon in a safe where they remained until he took them again on the return journey. It was not the custom to check them in until completion of the run, which in this instance would have been when he returned to El Paso. It was on this part of the trip that the accident occurred.

The rules of the Company imposed on the plaintiff the duty to "see that the chamber on which the hammer rests is empty"[1] and on the custodial and issuing

---

1. Rule 1111 of the Defendant is as follows: "In order to prevent accidental discharge of firearms, employees carrying revolvers must see that the chamber on which the hammer rests is empty. Under no condition should a revolver be loaded to full capacity. One chamber must be empty and the hammer must rest on that chamber."

agent of the Company the duty to issue firearms "in proper condition".[2] Plaintiff claimed that he had not, at the time of the accident, had adequate opportunity to learn of the rule requiring him to see that the pistol hammer rested against an empty chamber. He admitted that he failed to examine the pistol to see if it was properly loaded or to call the attention of the issuing agent to the difficulty of locking the holster flap. Therefore, the jury could hardly have escaped the finding that the failure on the part of the plaintiff to inspect the weapon and the failure to obtain a holster that would fasten were proximate causes of the accident. However, in this case his negligence would not bar a recovery if defendant was also guilty of negligence that proximately caused, or concurred in producing, the injury. It is admitted that the Express Company is not a subscriber to the Workmen's Compensation Law of Texas, Vernon's Ann.Civ.St. art. 8306 et seq., and that it employs more than three people. The effect of this was explained by the Supreme Court of Texas in Western Union Telegraph Co. v. Coker, 146 Tex. 190, 204 S.W.2d 977 at page 978 as follows: " * * * petitioner had three or more employees, but was not a subscriber under the Workmen's Compensation Law. Petitioner therefore is, by the terms of that law, deprived in this action of the defenses of contributory negligence, assumed risk, and negligence of a fellow employee, but it is necessary to a recovery by respondent that he prove negligence on the part of petitioner, or on the part of petitioner's agent or servant acting in the general scope of his employment, that was a proximate cause of the injury. Article 8306, Section 1, Revised Civil Statutes of 1925."

There was a duty on the part of the issuing agent of appellant, the custodian of the pistol in question, to use reasonable care to see that it was delivered to appellee in proper condition. Counsel for the Company also conceded (R. 150) that it was the policy of the Company to issue pistols with the hammer resting opposite an unloaded chamber in the cylinder and to load the remaining chambers with cartridges. Ordinarily—or in a case not ruled by Workmen's Compensation Statute—such a policy or rule would not have relieved appellee of the nondelegable duty to inspect, and to use due care for his own safety in the possession and handling of, so dangerous an instrumentality as a loaded pistol. The Company rules and common sense made it his duty to see that the pistol was loaded properly, and the jury could well have found in this case that his own negligence was the sole proximate cause of the accident. But before the jury would be justified in finding that the alleged omissions of the Company's agent were the proximate causes of the injury, it should have been instructed to determine whether or not the Company issued the pistol with the hammer resting on a loaded chamber and also issued a holster on which appellee could not fasten the flap, and whether or not these asserted failures, either singly or conjunctively, constituted negligence that produced, or concurred in producing, the injury. These were questions of fact, and in the charge the trial Court did not instruct the jury to find whether such an alleged issuing of such a pistol and holster constituted actionable negligence.

The Court charged the jury as follows: "Now, if you find and believe from a preponderance of evidence that at the time the pistol and holster in question were delivered to the Plaintiff at El Paso, the pistol wasn't then set on an empty chamber, or the holster was hard to close, so that the Plaintiff could not snap it fastened, or if you so believe both of said contingencies, and if you further believe from a preponderance of the evidence that the failure to have the pistol set on an empty chamber, or the failure to supply a holster which could be fastened, or both such failures, as the case may be, was or were a proximate cause of the Plain-

2. Rule 1109 of the Defendant is as follows: "Messengers at the end of their routes, and all local office employees carrying firearms, must when off duty leave them at the office. The Agent or some employee detailed by him must see that the firearms are taken care of and delivered in proper condition to employees on their return to duty."

tiff's injury, when he was shot in the leg at the time in question, then you will return your verdict in this case for the Plaintiff."

■ Counsel for defendant interposed sufficient objections to preserve the point, and we think that the foregoing charge constituted reversible error.

It must be conceded that if the flap on the holster had been fastened the pistol would not have fallen to the floor, and the accident would not have happened. The plaintiff did not allege that the flap on the holster could not be fastened but that it was difficult to fasten. The holster, or what purported to be the holster, was introduced in evidence and has been sent here as an exhibit. It was demonstrated in the trial below that the flap could be fastened. We have examined it and find that the holster can be fastened and when fastened is difficult to unfasten. Whether it is in the same condition as when issued to plaintiff is a question of fact. The plaintiff testified that when the holster was issued to him at El Paso he discovered that he was unable to fasten it, but being in a hurry, he did not call the agent's attention to this fact. It seems to us that if the defendant was guilty of negligence that was a primary and proximate cause of the accident it was in the furnishing of a holster which the recipient could not be reasonably expected to fasten. Whether the appellee could have been expected to fasten the holster would have been judged by what a reasonably prudent person in appellee's position could, or should, have been able to do, or should have done. The plaintiff did not describe what efforts he made to close the flaps. A question of fact was presented which would have had to be resolved against the Company by the jury before it could have found that the issuance of the pistol to appellee without the hammer resting against an empty chamber was the proximate cause of the accident, because if the retaining flap on the holster had been fastened properly the pistol could not have fallen to the floor and the accident could not have happened as claimed. Thus it is that the Court could not say, as a matter of law, that the furnishing of a pistol not set on an empty chamber and a holster hard to close was

negligence, and was not warranted in advising the jury that if either or both of such failures was the proximate cause of the injury, a verdict should be returned for the plaintiff without also submitting therewith the question of negligence vel non. The jury should have been told to determine whether or not either or both of these acts constituted negligence on the part of the Company, and, if so, was such negligence a proximate or contributing cause of the injury. The failure to require the jury to find whether or not the alleged omissions of the Company's agent did, or did not, constitute negligence is, in our opinion, reversible error. The plaintiff should not have been permitted to complain of the result of the non-closing of the flap on the holster if such was due to his own indifference or lack of reasonable effort to close it.

■ Error is also assigned because of a statement to the jury by counsel for plaintiff that the defendant was not a subscriber under the Workmen's Compensation Law and, therefore, did not have available the defenses of contributory negligence, etc. In view of the admissions made by counsel for defendant at the opening of the trial that the defendant employed more than three employees and that it was not a subscriber to Workmen's Compensation and his request to be allowed to strike from his answer any allegation that would require proof by plaintiff that defendant was not such a subscriber, it would seem to have been the better practice to have kept from the jury all reference to this matter under the Texas cases of Smith v. Great Atlantic & Pacific Tea Co., Tex.Civ.App.1936, 100 S.W.2d 1041, writ of error dismissed; Sonken-Galamba Corp. v. Hillman, Tex. Civ.App.1937, 111 S.W.2d 853, writ of error dismissed; Dial v. Wilke, Tex.Civ.App. 1937, 127 S.W.2d 379, writ of error refused. Since it is not necessary to a decision in this case, we shall, however, refrain from holding that the action of the Court in this respect, standing alone, was reversible error.

■ Whether or not the verdict should have been reduced for excessiveness was

a question for the lower Court to have settled. Home Ins. Co. v. Tydal Co., 5 Cir., 157 F.2d 851, and cases therein cited; and Reid v. Nelson, 154 F.2d 724.

Reversed and remanded.