# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 20, 2011

No. 10-60098
Summary Calendar

Lyle W. Cayce
Clerk

CHRISTOPHER WEST,

Plaintiff - Appellee

v.

DRURY COMPANY,

Defendant - Appellant

Appeal from the United States District Court for the
Northern District of Mississippi, Delta Division
USDC No. 2:07-CV-215

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Drury Company ("Drury") appeals the district court's denial of its motion for judgment as a matter of law or, alternatively, for a new trial following a jury verdict awarding the plaintiff, Christopher West ("West"), $500,000 on a negligence claim against Drury. Drury challenges the sufficiency of the evidence to support the jury's finding that Drury had and breached a duty to West and that this breach proximately caused West's injuries. Drury also claims error in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60098

the district court's exclusion of evidence of a worker's compensation settlement to rebut allegedly false testimony as to West's financial condition after the incident. Because we find that the district court committed no reversible error either in denying Drury's post-judgment motions or in excluding the collateral source evidence, we AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

West was injured on January 4, 2006 while working as an electrician on a hospital construction job in DeSoto County, Mississippi. Bovis Lend Lease, Inc. ("Bovis"), the general contractor, subcontracted with Drury to install roof decking materials on the hospital. The contract between Bovis and Drury stated that Bovis was responsible for hoisting materials to the roof of the eleven-story building. On the ground, Drury employees stacked and secured bundles of styrofoam roof decking into loads secured by a material handling strap. At trial, the jury heard the testimony of Drury's corporate representative, Drury's roof deck foreman, and another Drury employee. That testimony established that the loads in question consisted of approximately fifteen bundles of building material, each bundle being four feet long, two feet wide, and three feet high and weighing between twenty and twenty-five pounds. The bundles were stacked five across and three high, causing each load to weigh as much as 360 pounds. Drury employees secured these bundles with a single nylon strap approximately three inches wide across the bundles. The strap was then attached to a crane provided by Bovis, and a Drury employee would signal the crane operator, a Bovis employee, to lift the load to the roof.

On the day of the incident, approximately fifteen to twenty loads of styrofoam had already been lifted. At around 3:30 p.m., the crane operator lifted another load vertically to the roof line. What happened when the load was raised above the roof line was disputed at trial. Drury presented testimony that a sudden gust of wind hit the load, causing it to spin and that two to three

2

No. 10-60098

bundles of styrofoam then fell out. West argued that wind was not a factor that day, but rather that Drury negligently secured the load. It is undisputed that one of the bundles of styrofoam that fell out of the load hit West, who was standing on the ground talking with another employee near the east entrance of the hospital at the time.

The case proceeded to a jury trial on several theories of negligence. Along with the deposition testimony of the three witnesses previously mentioned, the jury heard from another employee, who was speaking with West when he was hit by the bundle. West's brother, who was working on site on the day of the incident, also testified in front of the jury. Following the testimony of West's brother, Drury's counsel attempted to introduce evidence of a worker's compensation settlement received by West, allegedly to rebut testimony from West's brother that West could not afford to get diabetes treatment as a result of the incident. The trial court first excluded the evidence because Drury failed to object at the time the testimony was introduced. Following a later motion and hearing, the trial court excluded the evidence after determining that the prejudicial nature of the evidence outweighed its probative value.

After West rested his case, Drury moved for judgment as a matter of law on all three of West's negligence theories. The trial court granted judgment for Drury only on the theory that Drury was negligent in failing to create a fall-free zone at the work site. After the close of all evidence, Drury renewed its motion for judgment as a matter of law, but the court denied it. The case was then submitted to the jury on two negligence theories: (1) Drury failed to properly secure the material handling strap on the accident load; and (2) Drury used a material handling strap, rather than some alternative method, to secure the styrofoam. The jury eventually returned a general verdict for West for $500,000.

Drury renewed its motion for judgment as a matter of law after the verdict and sought a new trial. The trial judge found insufficient evidence to support

3

the theory that Drury failed to properly secure the material handling strap. However, the judge denied the motion for judgment as a matter of law, finding ample evidence to support the theory that Drury was negligent in using a material handling strap, rather than some alternative method, to secure the styrofoam bundles and that this negligence proximately caused West's injuries. Also unconvinced that the jury's verdict was against the great weight of the evidence, the judge denied Drury's motion for a new trial. Drury timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this diversity action under 28 U.S.C. § 1291. Under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), federal courts apply state substantive law to any issue or claim which has its source in state law. *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006) (citation omitted). The parties do not dispute that Mississippi substantive law applies to this negligence action.

We review a motion for judgment as a matter of law de novo, applying the same standard as the district court. *S. Tex. Elec. Coop. v. Dresser-Rand Co. Inc.*, 575 F.3d 504, 507 n.1 (5th Cir. 2009). "A motion for judgment as a matter of law in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995). Thus, we review the evidence in the light and with all reasonable inferences most favorable to the party opposing the directed verdict. *Id.* (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)). The jury verdict must be upheld unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that a reasonable jury could not arrive at any verdict to the contrary. *Dresser-Rand Co. v. Virtual Automatic Inc.*, 361 F.3d 831, 838-39 (5th Cir. 2004).

No. 10-60098

A district court should not grant a motion for a new trial "unless the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence." *Dresser-Rand Co.*, 361 F.3d at 838-39. "When the trial judge has refused to disturb a Jury verdict, all the factors that govern our review of his decision favor affirmance. Deference to the trial judge, who has had an opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record, operates in harmony with deference to the jury's determination of the weight of the evidence and the constitutional allocation to the jury of questions of fact." *Foradori v. Harris*, 523 F.3d 477, 504 (5th Cir. 2008) (quoting *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982)). We review the district court's denial of a motion for a new trial for abuse of discretion. *Dresser-Rand Co.*, 361 F.3d at 839; *Dawsey v. Olin Corp.*, 782 F.2d 1254, 1261-62 (5th Cir. 1986) ("In order to establish an abuse of discretion the [plaintiffs] must show an 'absolute absence of evidence to support the jury's verdict.'" (citation and quotation omitted)).

We likewise review a district court's evidentiary rulings for abuse of discretion. *United States v. McClatchy*, 249 F.3d 348, 358 (5th Cir. 2001). "[W]e will not reverse a district court's evidentiary rulings unless substantial prejudice results to the complaining party." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 602 (5th Cir. 2000).

## III. DISCUSSION

### A. Sufficiency of Evidence to Establish Negligence

To recover in a negligence action under Mississippi law, the plaintiff must prove the following by a preponderance of the evidence: (1) duty, (2) breach of duty, (3) causation, and (4) injury. *Spotlite Skating Rink, Inc. v. Barnes,* 988 So. 2d 364, 368 (Miss. 2008) (citation omitted). Mississippi courts define negligence as "doing what a reasonable, prudent person would not do, or failing to do what a reasonable, prudent person would do, under substantially similar

5

No. 10-60098

circumstances." *Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277 (Miss. 2007).

### 1. Duty and Breach

Under Mississippi law, every person who undertakes an action has a duty of reasonable care to protect against causing injury to others. *Foradori*, 523 F.3d at 486; *see also Lloyd G. Oliphant & Sons Paint Co. v. Logan*, 12 So. 3d 614, 618 (Miss. Ct. App. 2009) (finding that a subcontractor had a duty to all employees at the job site to furnish and maintain temporary lighting in an interior stairwell). Thus, Drury owed that duty to West. If a defendant's conduct is reasonable in light of the "foreseeable risks," there is no negligence and no liability. *Donald v. AMOCO Prod. Co.*, 735 So. 2d 161, 175 (Miss. 1999) (stating that a defendant is obligated solely to safeguard against reasonable probabilities and is not charged with foreseeing all occurrences, even though such occurrences are within the range of possibility); *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004) ("[T]he important component of the existence of the duty is that the injury is 'reasonably foreseeable . . . .'" (quoting *Lyle v. Mladinich*, 584 So. 2d 397, 399 (Miss. 1991))). A harm is the "foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention." *Signal Int'l LLC v. Miss. Dep't of Transp.*, 579 F.3d 478, 492 (5th Cir. 2009); *Rhaly v. Waste Mgmt. of Miss.*, 43 So. 3d 509, 514 (Miss. Ct. App. 2010) (noting that the plaintiffs did not have to show that the defendant was actually aware of the danger presented by its action, but rather whether the defendant should have reasonably foreseen that a dumpster placed on the banks of a ditch could be carried into the ditch by rising water, obstruct the ditch, and cause or intensify flooding of nearby properties).

No. 10-60098

To prove breach of a duty, West had to show that Drury did not act in a reasonable manner under the circumstances. *Davis v. Christian Bhd. Homes of Jackson, Miss., Inc.*, 957 So. 2d 390, 404 (Miss. Ct. App. 2007) (stating that a defendant breaches a duty owed to the plaintiff if the defendant "fails to act as would a reasonable person under the same or similar circumstances . . . ." (citing *Baker, Donelson, Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 449 (Miss. 2006))). "Foreseeability and breach of duty are . . . issues to be decided by the finder of fact once sufficient evidence is presented in a negligence case." *Rein*, 865 So. 2d at 1144. The mere fact of an accident and injury does not create a presumption or constitute evidence of negligence. *CFC Fabrication, Inc. v. Dunn Constr. Co., Inc.*, 917 F.2d 1385, 1389 (5th Cir. 1990) (quoting *Milner Enters., Inc. v. Jacobs*, 207 So. 2d 85, 89 (Miss. 1968)).

After review, we conclude that there is sufficient evidence to establish that Drury breached its duty to safely load the styrofoam roofing materials by using only a material strap. West did not have to present testimony as to industry standards, custom, or regulations to establish breach of a general duty of care. *See Salem v. U.S. Lines Co.*, 370 U.S. 31, 37 n.6 (1962) (finding that expert testimony about customary equipment on a ship was not essential to establish that it was negligent to fail to provide some type of safety device); *cf. Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 426 (D.C. 2000) (rejecting contention that the plaintiff needed to provide evidence of regulations or practices and procedures in the construction industry to allow the jury to evaluate the contractor's activities, as the jury "need only find that the conduct of the party falls short of *any* standard that they would agree on as reasonable." (citation omitted)). Further, although Drury argues that West failed to show breach because West did not present evidence to rebut testimony that Drury used material handling straps for years without incident, the jury could still have found Drury negligent. Mississippi courts have rejected the argument that there

7

is no negligence simply because an injury rarely occurs or has never occurred. *Rein*, 865 So. 2d at 1145.

Here, witnesses testified that the roofing materials could be enclosed with mesh wrapping.  Other testimony established that a platform with guardrails could stop the load from tipping if the wind picked up and that mesh could hold the bundles.  Another witness testified that, in his experience as an electrician on similar job sites, he had seen roofers lifting similar materials using mesh wrap around the bundles to keep materials from flying off as they were lifted.  This witness had also seen a platform or some type of flat surface used on other job sites.  Finally, the jury heard testimony that even if the material strap was properly secured around the load, the materials could fall out.  From this testimony, we believe the jury could utilize its common experience to find that Drury breached its duty to safely secure and lift the roofing materials by using a material handling strap, rather than an alternative method, to secure the bundles.  *See Salem*, 370 U.S. at 36 (finding that the jury had "sufficient evidence, both from oral testimony and from photographs, . . . to determine whether some railing or hand hold . . . was reasonably necessary for the protection of a seaman . . . ."); *cf. Parra v. Bldg. Erection Servs.*, 982 S.W.2d 278, 285-86 (Mo. Ct. App. 1998) (finding that the trial court erred in directing a verdict for the defendant on a negligence claim because whether an unsecured wire rope cable posed a danger was a subject within the experience or knowledge of the jurors, rendering expert testimony unnecessary).

### 2. Proximate Cause

Mississippi courts define proximate cause as the "cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result could not have occurred." *Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 880 (Miss. 2006) (quoting *Delahoussaye v. Mary Mahoney's, Inc.*, 783 So. 2d 666, 671 (Miss. 2001)).  In Mississippi, proximate

No. 10-60098

cause comprises two distinct concepts: (1) cause in fact and (2) foreseeability. *Davis*, 957 So. 2d at 404 (citation omitted). "Cause in fact means that the act or omission was a substantial factor in bringing about the injury, and without it the harm would not have occurred. Foreseeability[1] means that a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others." *Id.* (citation omitted). Whether the breach of a duty proximately caused a person's injuries is ordinarily a jury question in Mississippi. *Ill. Cent. Gulf R.R. Co. v. Milward*, 902 So. 2d 575, 582 (Miss. 2005); *Salster v. Singer Sewing Mach. Co.*, 361 F. Supp. 1056, 1060 (N.D. Miss. 1973) ("The proximate cause of an injury is not a question of science or of legal knowledge, but is to be determined as a fact in view of the circumstances, and from a consideration of all the attending facts and circumstances present in the case under consideration, and of all the evidence, and in the exercise of practical common sense, rather than by the application of abstract definitions." (citation and quotation omitted)).

From the evidence presented, we conclude that the jury could infer that, had the styrofoam loads been enclosed with mesh wrapping or lifted on a platform with guardrails, the incident would have more likely than not been prevented. *See Ry. Express Agency, Inc. v. Cox*, 179 F.2d 593, 595 (5th Cir. 1950) (finding that company rules and common sense made it the appellant's duty to see that a pistol was loaded properly, and the jury could have found that the appellant's negligence was the sole proximate cause of an accident). We agree with the trial judge that this case involved the basic common sense of an average layperson and, therefore, West's failure to present expert testimony on causation

---

[1] Because Drury does not seem to dispute that it was foreseeable that workers on the ground could be struck and injured if roofing materials fell out during lifting, we focus our analysis on cause in fact. *See Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 926 (5th Cir. 2008) ("A party waives an issue if he fails to adequately brief it on appeal." (citation omitted)).

9

was not detrimental to his negligence claim.[2] *Wal-Mart Stores, Inc. v. Johnson*, 807 So. 2d 382, 388 (Miss. 2001) ("The general rule in Mississippi is that expert testimony is not required where the facts surrounding the alleged negligence are easily comprehensible to the jury."); *see also K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 361 (Tex. 2000) (finding an expert's opinions would not be helpful to the jury, as the conclusions simply told the jury how to view the facts and involved matters within the average juror's common knowledge). The testimony as to the feasibility of utilizing alternative methods, that these methods might have held the bundles, and that one witness had seen other companies using these alternative methods to prevent objects from falling out provided a sufficient evidentiary basis from which the jury could utilize its common sense to find cause in fact.

Finally, we will not disturb the jury's verdict based on Drury's argument that a sudden gust of wind caused the accident and, as an "act of God," this gust therefore relieved Drury of liability.[3] *See McFarland v. Entergy Miss., Inc.*, 919 So. 2d 894, 903 (Miss. 2005) (discussing the definition of an "act of God" as "any accident, due directly and exclusively to natural causes without human intervention, which *by no amount of foresight, pains, or care, reasonably to have been expected could have been prevented*" (citing *Skandia Ins. Co. v. Star Shipping*, 173 F. Supp. 2d 1228, 1239 (S.D. Ala. 2001) (emphasis added))). The

---

[2] We note that in a diversity action, whether expert testimony is required is a matter of state law. *See Rodriguez v. Pacificare of Tex. Inc.*, 980 F.2d 1014, 1020 (5th Cir. 1993) ("When state law requires a plaintiff to prove negligence by expert testimony, summary judgment can be granted where the defendant presents expert affidavits and the plaintiff presents no such affidavits.").

[3] The court instructed the jury on an "act of God" as follows: "[i]f you find from a preponderance of the evidence in this case that plaintiff's injury was due directly and exclusively to natural causes, without human intervention, which could not have been prevented by the exercise of reasonable care and foresight, the occurrence is an act of God for which the defendant is not liable."

testimony at trial conflicted as to whether it was windy on the day of the incident. West presented testimony that it was a nice day with no wind. Drury's roof deck foreman, who was standing on the roof at the time, stated that he felt the wind slightly and had been told by the crane operator that the wind was blowing at around ten miles per hour. The foreman and Drury's other employee testified to the effect that if the wind had been a factor, the loading would have stopped, but there was no reason to stop loading that day. On the other hand, the two Drury employees and Drury's corporate representative testified that a gust of wind caught the load as it rose above the roof line, causing it to spin and the styrofoam to fall out. From this conflicting testimony, the jury had a sufficient basis upon which to make a factual determination that there was either no wind gust or that any such gust did not qualify as an "act of God."

Ultimately, we cannot find the facts and inferences weigh so strongly in favor of Drury that no reasonable jury could find negligence. Similarly, we do not believe that the trial court abused its discretion in denying Drury's motion for a new trial. We thus AFFIRM the denial of Drury's post-judgment motions.

**B. Exclusion of Worker's Compensation Settlement Evidence**

Finally, we reject Drury's request that we remand for a new trial because the trial court allegedly abused its discretion in excluding Drury's proffered impeachment evidence. Drury claims that it should have been allowed to rebut testimony from West's brother that West could not afford diabetes treatment by introducing evidence of a worker's compensation settlement West received.[4]

---

[4] In diversity cases, we apply state substantive law, but federal procedural rules. *Grenada Steel Indus., Inc. v. Ala. Oxygen Co.*, 695 F.2d 883, 886 (5th Cir. 1983). Drury's argument implicates the "collateral source rule," which has been defined as both a substantive and evidentiary rule. *See David v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994) (discussing the "collateral source rule" as substantive, then stating that "[m]arried to this substantive rule is an evidentiary rule that proscribes introduction of evidence of collateral benefits out of a concern that such evidence might prejudice the jury"); *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 425-26 (5th Cir. 2008) (discussing the "collateral source rule," as adopted by the Louisiana Supreme Court, as both a rule of evidence and damages).

No. 10-60098

Drury asserts that the brother's testimony left the jury with a false impression that West was destitute as a result of the incident and that the proffered impeachment evidence would have impacted the credibility of West's brother.[5]

During a bench conference following the brother's testimony, the district court, citing Federal Rule of Evidence 103, found that Drury waived its argument by failing to object to the testimony at the time the testimony was introduced. Drury's counsel later moved to introduce the worker's compensation evidence. After hearing argument on the issue, the district court concluded that the evidence was more prejudicial than probative because the disputed statement by West's brother referred to West's inability to obtain treatment for diabetes, a condition unrelated to the accident and the settlement. The court also believed that West's brother was testifying to West's situation between the time of the injury and when he received the settlement.

After review, we can find no error in the trial court's decision to exclude this evidence under the circumstances. A trial court "has broad discretion to conduct the trial in an efficient and orderly manner in the admission or exclusion of evidence." *Gates v. Shell Oil*, 812 F.2d 1509, 1512 (5th Cir. 1987). "Even improper evidentiary rulings do not constitute reversible error unless 'a substantial right of the party is affected.'" *Id.* (quoting FED. R. EVID. 103(a)).

---

Mississippi follows the "collateral source rule." *See Cent. Bank of Miss. v. Butler*, 517 So. 2d 507, 511-12 (Miss. 1987); *Coho Res., Inc. v. McCarthy*, 829 So. 2d 1, 19 (Miss. 2002) (declining to recognize an exception to the collateral source rule to rebut an averment of poverty by the plaintiff); *Robinson Prop. Grp., L.P. v. Mitchell*, 7 So. 3d 240, 245 (Miss. 2009) (allowing collateral source evidence to attack the credibility of a witness through the impeachment of false or misleading testimony if the trial court finds it relevant and that its prejudicial effect does not outweigh its probative value). Ultimately, we do not decide if the substantive aspects of Mississippi's "collateral source rule" apply here, as the outcome in this case would be the same under either Mississippi law or the Federal Rules of Evidence.

[5] During trial, West's brother was asked if West went to the doctor for diabetes, a medical ailment unrelated to the accident as stipulated by both parties. Without objection, West's brother responded that West could not afford to go to the doctor because he had no insurance.

12

No. 10-60098

The trial judge found the evidence to be more prejudicial than probative. Further, the proffered evidence appears to be an effort to use extrinsic evidence to impeach West's brother on a collateral or irrelevant matter. *See Jones v. S. Pac. R.R.*, 962 F.2d 447, 450 (5th Cir. 1992) ("There is no right to impeach a witness with respect to collateral or irrelevant matters, however."). Finally, even if the judge should have allowed Drury to present evidence of the worker's compensation settlement, we cannot see how this error affected Drury's substantial rights. Thus, the error, if any, is not reversible error.

AFFIRMED.